**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAM TWO TWO, | : | Civil No. 1:17-CV-02222 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| NAPA TRANSPORTATION, INC. *et al.* | : | |
| | : | |
| Defendants. | : | Judge Jennifer P. Wilson |

**MEMORANDUM**

This is an employment discrimination case in which Plaintiff William Two Two ("Two Two") alleges that he was terminated on the basis of his race in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The case is presently before the court on Defendants' motion for summary judgment. For the reasons that follow, the motion is granted in part and denied in part.

**BACKGROUND AND PROCEDURAL HISTORY**

Two Two is a Native American individual who worked as a truck driver for Defendant NAPA Transportation Inc. ("NAPA") before being terminated in 2017. On December 4, 2017, he filed a complaint in this district alleging that he had been terminated because of his race in violation of Title VII and § 1981. (Doc. 1.) The complaint named as defendants NAPA and Joseph Dennison ("Dennison"), NAPA's Chief Financial Officer ("CFO"). (*Id.* ¶¶ 3–4.)

United States District Judge Yvette Kane denied Defendants' motion to dismiss the complaint on July 24, 2018, and Defendants then answered the

complaint on August 13, 2018.  (Docs. 17, 19.)  The case was reassigned to the undersigned pursuant to a verbal order on November 19, 2019.  Defendants subsequently filed the instant motion for summary judgment on December 20, 2019.  (Doc. 57.)  Briefing on the motion has concluded, and it is now ripe for the court's disposition.  (*See* Docs. 61, 73–74.)

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1331, which allows a district court to exercise subject matter jurisdiction in civil cases arising under the Constitution, laws, or treaties of the United States.

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary."  *Id.*  "'A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case.'"  *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

2

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)).  The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249.  Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but instead, 'must set forth specific facts showing that there is a genuine issue for trial.  Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## MATERIAL FACTS[1]

Two Two is a Native American individual who began working for NAPA as a truck driver in 2014. (Doc. 1 ¶ 19; Doc. 19 ¶ 19; Doc. 57 ¶¶ 7, 30; Doc. 72 ¶¶ 7, 30.) During his employment, Two Two was involved in a crash in July 2014 that NAPA deemed preventable. (Defendants' Exhibit E, Doc. 57-2 at 220.) As a result, NAPA gave Two Two a letter that informed him that any future preventable crashes could lead to termination of his employment. (*Id.*)

---

[1] Where a fact is admitted by both sides either in the complaint, answer, or statements of material facts, the court will cite pleadings from both parties and treat the fact as undisputed. Conversely, where a fact is not admitted by both sides, the court will view the fact in the light most favorable to Two Two as the non-movant and draw all reasonable inferences in his favor to determine whether there is a genuine issue of material fact for trial. *See Jutrowski*, 904 F.3d at 288.

Two Two's employment with NAPA was terminated in November 2014. (Doc. 57 ¶ 13; Doc. 72 ¶ 13.)  Approximately a year later, he entered into a contracting lease agreement for a truck with NAPA.  (Doc. 57 ¶ 14; Doc. 72 ¶ 14.) Under the contract, Two Two was classified as an owner-operator of the truck. (Doc. 57 ¶ 16; Doc. 72 ¶ 16.)  The contract further provided that Two Two's services to NAPA were "strictly as a contractor and not as an employee."  (Doc. 57 ¶ 17; Doc. 72 ¶ 17.)  Two Two was responsible for the maintenance and inspection of his truck under the contract.  (Doc. 57 ¶¶ 18–22; Doc. 72 ¶¶ 18–22.)[2]  Two Two was also given independent discretion under the contract to control the manner and means by which he performed his work.  (Doc. 57 ¶ 23; Doc. 72 ¶ 23.)  Under the terms of the contract, Two Two was required to maintain his own equipment and insurance, was given discretion to determine his own hours and breaks, and was

---

[2] Two Two asserts that the terms of the contract "are conclusions of law" and does not respond to Defendants' factual allegations regarding the terms of the contract.  (Doc. 72 ¶¶ 18–23.)  The court disagrees.  The terms of the contract between Two Two and NAPA defined several factual aspects of their professional relationship that are plainly relevant to the question of whether Two Two was an employee or an independent contractor, *see, e.g.*, *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 180 (3d Cir. 2009), and Two Two cannot evade the responsibility of responding to Defendants' factual allegations simply by labeling them "conclusions of law."  *See Thomas v. Duvall*, No. 3:16-CV-00451, 2019 WL 8013742, at *6 (M.D. Pa. Oct. 3, 2019) (deeming allegations in the plaintiff's complaint admitted where defendants labeled factual allegations as conclusions of law), *report and recommendation adopted*, No. 3:16-CV-00451, 2019 WL 6769324, at *1 (M.D. Pa. Dec. 12, 2019); *see also Kegerise v. Susquehanna Twp. Sch. Dist.*, 321 F.R.D. 121, 124 (M.D. Pa. 2016) (holding that party could not evade obligation to respond to allegation by labeling it a conclusion of law).  Accordingly, Defendants' factual allegations regarding the terms of the contract are deemed admitted.

given the right to determine his methods and hire his own employees if necessary. (*See* Defendants' Exhibit G, Doc. 57-2 at 223–37.)

On March 24, 2017, Two Two was involved in an accident in Stratford, Connecticut.  (Doc. 57 ¶ 24; Doc. 72 ¶ 24.)  Following the accident, Two Two's truck was taken for repairs at a Freightliner repair shop.  (Doc. 72 ¶¶ 37–39; Doc. 74-1 ¶¶ 37–39.)  Freightliner subsequently inspected the truck and passed it.  (Doc. 72 ¶ 39; Doc. 74-1 ¶ 39.)  Nevertheless, NAPA required Two Two to have the truck inspected a second time.  (Two Two Deposition, Doc. 73-2 at 51–52.) NAPA performed the second inspection and concluded that the brakes on Two Two's truck were defective.  (*Id.* at 53–54.)  NAPA repaired the brakes and Two Two's truck passed the inspection.  (*Id.*)

Two Two was involved in another accident in Cumberland County, Pennsylvania on June 9, 2017.  (Doc. 57 ¶ 25; Doc. 72 ¶ 25.)  During that accident, Two Two's brakes failed and his truck rear-ended another vehicle.  (Doc. 57 ¶ 26; Doc. 72 ¶ 26; Doc. 73-2 at 70.)  NAPA subsequently inspected the vehicle and agreed that the brakes were defective.  (Doc. 72 ¶¶ 51–52; Doc. 74-1 ¶¶ 51–52.) Two Two offered to pay for the necessary repairs to the truck, and Dennison responded "No, you're fired.  And we don't have the money to be loaning you." (Doc. 72 ¶¶ 55–56; Doc. 74-1 ¶¶ 55–56.)  Two Two informed Dennison that he had the money to repair the truck, and Dennison responded "I'm tired of you

people ripping me off.  Get off of my property.  You've got one hour."  (Doc. 72 ¶ 57.)[3]  Two Two asked Dennison what he meant by "you people" and Dennison responded, "well you know what I mean William, you people."  (*Id.* ¶ 58.)

Two Two was treated differently from his white coworkers on several occasions during his employment with NAPA.  Specifically, Two Two testified that he was repeatedly referred to by only his last name and that no other employee was referred to by their last name.  (Doc. 73-2 at 92–93.)  Two Two was also denied the use of a rental truck while his truck was being repaired, despite a white coworker being granted the use of a rental truck in a similar situation.  (*Id.* at 105–06.)

### THE PARTIES' SUMMARY JUDGMENT ARGUMENTS

Defendants raise several arguments at the summary judgment stage.  First, they argue they are entitled to summary judgment as to Two Two's Title VII claim because Two Two was not an employee as defined by that statute.  (Doc. 61 at 8–13.)  Second, Defendants argue they are entitled to summary judgment as to Two Two's race discrimination claims because Two Two cannot establish a prima facie case of discrimination.  (*Id.* at 16–19.)  Third, Defendants argue that Two Two has not specifically pleaded a hostile work environment claim but that Defendants

---

[3] Defendants deny that Dennison ever said "you people" to Two Two.  (Doc. 74-1 ¶ 57.)

would nonetheless be entitled to summary judgment as to such a claim because Two Two cannot establish the elements of a hostile work environment claim as a matter of law. (*Id.* at 19–22.) Fourth, Defendants argue that they had a legitimate nondiscriminatory reason for terminating Two Two. (*Id.* at 22–25.) Fifth, Defendants argue that Two Two's race discrimination claim fails because he cannot establish that the asserted reasons for his termination were pretextual. (*Id.* at 25–27.) Sixth, Defendants argue that they are entitled to summary judgment as to any negligence claim arising from Two Two's allegedly defective brakes because such a claim was not pleaded in Two Two's complaint and because it would be barred by Pennsylvania's Worker's Compensation Act. (*Id.* at 27–29.) Finally, Defendants argue that Two Two has failed to establish that he is entitled to punitive damages. (*Id.* at 29–31.)

Two Two opposes Defendants' summary judgment motion. He first argues that it is immaterial to his claims under § 1981 and Title VII whether he was an employee or an independent contractor. (Doc. 73 at 4–5.) Two Two then argues that the court should apply the mixed motives standard under *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) because there is direct evidence of race discrimination and that his claims should survive summary judgment under that standard. (Doc. 73 at 5–8.) Two Two argues that his claims would also survive summary judgment under the pretext analysis set forth in *McDonnell Douglas*

8

*Corp. v. Green*, 411 U.S. 792 (1973).  (Doc. 73 at 8–14.)  Beyond the race discrimination claims, Two Two argues that he has produced sufficient evidence for a hostile work environment claim to go to trial.  (*Id.* at 14–16.)  Finally, Two Two argues that the Workers Compensation Act does not apply to this case and that he has properly sought punitive damages.  (*Id.* at 16–17.)

Defendants argue in their reply brief that there is no direct or indirect evidence of discrimination and that they should accordingly be granted summary judgment as to Two Two's race discrimination claims.  (Doc. 74 at 2–9.)  Defendants further argue that they had a legitimate nondiscriminatory reason for firing Two Two.  (*Id.* at 9–12.)  Finally, Defendants reiterate their argument that Two Two did not plead a hostile work environment claim and that there is insufficient evidence to support such a claim.  (*Id.* at 12–13.)

**DISCUSSION**

### A. Defendants Are Entitled to Summary Judgment Under Title VII Because Two Two Was an Independent Contractor

The court will first analyze Defendants' race discrimination claims.  Title VII makes it an unlawful employment practice for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of

9

employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

To succeed on his discrimination claim under Title VII, Two Two must establish that he was an employee of Defendants, rather than an independent contractor. *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 179–80 (3d Cir. 2009). This question turns on Defendants' "right to control" Two Two's actions. *Id.* at 180 (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (1992)). Relevant factors that the court should consider in determining whether an individual qualifies as an employee include:

> the skill required [for the individual's work]; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.

*Id.* at 180 (quoting *Darden*, 503 U.S. at 323).

Defendants argue that Two Two was an independent contractor not entitled to the protections of Title VII because he and NAPA had a contract for his services that indicated a lack of control as to how Two Two performed his work. (Doc. 61 at 10–12.) Specifically, Defendants note terms of the contract that (1) required Two Two to maintain his own equipment at his expense; (2) specified that he was

responsible for determining the "methods, manner and means" of performing his contractual obligations; (3) gave Two Two sole responsibility for determining the hours he would work and when he would take breaks; (4) gave Two Two the power to employ other individuals to assist him in performing his contract with NAPA; and (5) required Two Two to maintain his own insurance.  (*Id.* at 12–13.) Two Two does not dispute the relevant provisions of the contract and instead argues that the question of whether he was an employee or an independent contractor is legally irrelevant.  (Doc. 73 at 5.)

Two Two is correct that his possible status as an independent contractor is irrelevant to his § 1981 claim.  *See Brown*, 581 F.3d at 181 ("[A]n independent contractor may bring a cause of action under section 1981 for discrimination occurring within the scope of the independent contractor relationship.").[4]  But his argument fails with respect to his Title VII claim, because controlling case law makes clear that an independent contractor is not entitled to the protections of Title VII.  *See Brown*, 581 F.3d at 181.  The court therefore must determine whether Two Two was an employee or an independent contractor as a threshold question with respect to his Title VII claim.

---

[4] Defendants apparently concede this point because they only seek summary judgment based on Two Two's status as an independent contractor as to Two Two's Title VII claim.  (*See* Doc. 61 at 8–13.)

Although it is not dispositive, the court finds that the language of Two Two's contract with NAPA leads to the conclusion that he was an independent contractor. *See id.* (noting that the language of a plaintiff's contract, "while not dispositive of the plaintiff's employment status" can provide "strong evidence that [he] was an independent contractor"). Most notably, the contract specified that Two Two's services to NAPA were "strictly as a contractor and not as an employee." (Doc. 57 ¶ 17; Doc. 72 ¶ 17.) Other terms of the contract also indicated that NAPA had little control over Two Two's actions. *See Brown*, 581 F.3d at 180 (stating that a plaintiff's status turns on the employers' "right to control" the plaintiff's actions (quoting *Darden*, 503 U.S. at 323). Specifically, Two Two was required to maintain his own equipment and insurance, was given discretion to determine his own hours and breaks, and was given the right to determine his methods and hire his own employees if necessary. (*See* Defendants' Exhibit G, Doc. 57-2 at 223–37.) Given the language of the contract and Two Two's failure to marshal evidence to support a contrary conclusion, the court finds that Defendants are entitled to summary judgment as to the issue of whether Two Two was an independent contractor. Defendants are, by extension, entitled to summary judgment as to Two Two's Title VII claim.

## B. Defendants Are Not Entitled to Summary Judgment Regarding Two Two's § 1981 Claim

The court turns its attention to Two Two's § 1981 claim.  As a threshold matter, the court notes that the parties disagree as to the analytical framework that the court should employ.  Two Two argues that the case should be analyzed under the mixed motives standard set forth in *Price Waterhouse*, 490 U.S. at 228, because Dennison's "you people" comment is direct evidence of discrimination. (Doc. 73 at 5–8.)  Defendants disagree, arguing there is no direct evidence to support Two Two's claim and that the case should therefore be analyzed under the *McDonnell Douglas* burden-shifting framework.  (Doc. 74 at 2–4.)

Under the *Price Waterhouse* mixed-motive standard, which was subsequently codified in 42 U.S.C. § 2000e-2(m), "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."  42 U.S.C. § 2000e-2(m).

Although direct evidence of discrimination is not required to proceed under the *Price Waterhouse* framework at trial, *see Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–02 (2003), the question of whether a plaintiff has produced direct evidence of discrimination is relevant at the summary judgment stage because the

13

presence of direct evidence shifts the burden of proof and production to the defendants. *Glanzman v. Metro. Mgmt. Corp.*, 391 F.3d 506, 512–14 (3d Cir. 2004). Once a plaintiff produces direct evidence of discrimination "the defendant has the burden of producing evidence to show that it would have made the same decision in the absence of discriminatory animus." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 269 (3d Cir. 2010).

Direct evidence of discrimination is evidence that a decision maker placed "substantial negative reliance on an illegitimate criterion." *Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 248 (3d Cir. 2002). Stated differently, direct evidence "would be evidence which, if believed, would prove the existence of the fact in issue *without inference or presumption.*" *Torrey v. Casio, Inc.*, 42 F.3d 825, 829 (3d Cir. 1994) (emphasis in original) (quoting *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).

Here, the court agrees with Defendants that Two Two has not produced any direct evidence of discrimination. A plausible interpretation of Dennison's "you people" comment is that he meant to refer to Two Two's status as a Native American or a non-white person. Equally plausible, however, is that Dennison meant to refer to Two Two's membership in some other non-racial class of individuals, such as independent contractors, professional drivers, or truck lessees. The fact that one must choose between competing plausible inferences to

14

determine whether Dennison's comment was motivated by Two Two's race indicates that the evidence is circumstantial, rather than direct.  *See id.* (noting that direct evidence must be sufficient to prove a fact "without inference or presumption").

Thus, because Two Two's race discrimination claim is based on circumstantial evidence of discrimination, the court will analyze it under the *McDonnell Douglas* burden-shifting framework.[5]  *See McDonnell Douglas*, 411 U.S. at 792.  The *McDonnell Douglas* framework contains three steps.  At the first step, the plaintiff must establish a prima facie case of discrimination.  *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).  If the plaintiff meets that burden, the burden of production shifts to the defendants to offer a legitimate nondiscriminatory reason for the adverse treatment of the plaintiff.  *Id.*  The burden then shifts back to the plaintiff to show that the proffered nondiscriminatory reason was a pretext for discrimination.  *Id.* at 427.

To establish a prima facie case of discrimination at the first step of the *McDonnell Douglas* framework, a plaintiff must show (1) that he is a member of a

---

[5] Although *McDonnell Douglas* and many other cases in this section are Title VII cases, they are applicable here because the substantive standards for a discrimination claim are the same under Title VII and § 1981.  *E.g.*, *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999) (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996)); *Pedro v. City Fitness, LLC*, 803 F. App'x 647, 651 n.5 (3d Cir. 2020).

protected class, (2) that he was qualified for the position he had, (3) that he suffered an adverse employment action, and (4) that "the action occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013) (quoting *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).  At the summary judgment stage, the plaintiff's burden is to show that there is sufficient evidence "to convince a reasonable factfinder to find all of the elements of the prima facie case." *Burton*, 707 F.3d at 426 (quoting *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001)).

Two Two has met his burden to establish a prima facie case.  The first three elements of the prima facie case are easily met because Two Two is a Native American, he was working as an independent contractor for the Defendants and was qualified to do so, and his contract was terminated.  The fourth element is also met because Dennison's "you people" comment is sufficient evidence for a reasonable finder of fact to infer intentional discrimination.

Thus, because Two Two has established a prima facie case, the burden shifts to Defendants to offer a legitimate nondiscriminatory reason for the adverse employment action. *Burton,* 707 F.3d at 426.  "This burden is 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a

conclusion that it took the adverse employment action for a non-discriminatory reason." *Id.* (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)).

Defendants assert that they had a legitimate nondiscriminatory reason for terminating Two Two because he was involved in three separate accidents while driving for NAPA. (Doc. 61 at 23–25.) The court finds this evidence sufficient for a reasonable finder of fact to conclude that Defendants terminated Two Two for a nondiscriminatory reason, and Defendants have therefore met their burden.

Accordingly, the burden shifts back to Two Two to show that the proffered nondiscriminatory reason was a pretext for discrimination. *Burton*, 707 F.3d at 427. To meet his burden at this stage, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). Two Two meets this burden here because Dennison's "you people" comment could allow a reasonable finder of fact to either (a) disbelieve Defendants' proffered reason for terminating Two Two or (b) believe that Two Two's race was a motivating factor in his termination. The court will therefore deny the motion for summary judgment with regard to Two Two's § 1981 race discrimination claim.

### C. Defendants Are Entitled to Summary Judgment as to Any Hostile Work Environment, Retaliation, or Negligence Claims

Having resolved Defendants' motion as it pertains to Two Two's race discrimination claims, the court turns its attention to Defendants' remaining arguments. The court concludes that Defendants are entitled to summary judgment as to any hostile work environment claim, retaliation claim, or negligence claim because none of those claims were pleaded in Two Two's complaint.

The scope of a case is defined by the plaintiff's complaint. *See State of Nebraska v. State of Wyoming*, 515 U.S. 1, 8 (1995) (noting that the scope of the litigation "as envisioned under the initial pleadings" was the starting point for the Court's analysis of motions to amend); *Johnson v. Wynn's Extended Care, Inc.*, 635 F. App'x 59, 60 (3d Cir. 2015) ("Johnson's second amended complaint only pled violations of the TCCWNA and the New Jersey Consumer Fraud Act, thus limiting the scope of this case to potential violations of those two statutes."); *see also* 43A CORPUS JURIS SECUNDUM *Injunctions* § 334 (Westlaw databased updated June 2020) ("The issues properly determinable by the court are those presented by the pleadings, and issues which are outside the scope of the case as presented by the pleadings generally are not before the court for determination."). Accordingly, a complaint must give defendants "fair notice" of what claims a plaintiff is raising against the defendants and the grounds upon which the claims rest. *Carpenters*

18

*Health v. Mgmt. Res. Sys. Inc.*, 837 F.3d 378, 384 (3d Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

In this case, Two Two's complaint raised only two counts: a count for race discrimination under Title VII and a count for race discrimination under § 1981. (Doc. 1 ¶¶ 73–79.)  Although Count I of the complaint states that it is for "Title VII violations," Paragraph 74 makes clear that the count raises a race discrimination claim.  (*See id.* ¶ 74 ("The foregoing conduct by the Defendant constitutes unlawful discrimination against the Plaintiff on the basis of race and/or color.").) The introduction to Two Two's complaint also clearly indicates that the complaint raises only race discrimination claims.  (*See id.* ¶ 1 ("Plaintiff initiates this action to seek redress against Defendants, his former employers, for unlawful race discrimination in violation of 42 U.S.C. § 1981 and other applicable law."). Nowhere in the complaint is there any mention—let alone a claim—of a hostile work environment, retaliation, or negligence.  (*See generally id.*)  Defendants are therefore entitled to summary judgment as to any hostile work environment, retaliation, or negligence claims because they were not properly pleaded in the Plaintiff's complaint.  *See, e.g.*, *Drenth v. Boockvar*, No. 1:20-CV-00829, 2020 WL 4805621, at *7 (M.D. Pa. Aug. 18, 2020) (granting summary judgment because claim was not properly pleaded in plaintiff's complaint).

**D. Defendants' Motion Is Denied with Respect to Two Two's Claim for Punitive Damages**

Finally, the court will address Defendants' argument that they are entitled to summary judgment as to Two Two's claim for punitive damages. Defendants argue that they are entitled to summary judgment as to Two Two's request for punitive damages because Pennsylvania law limits punitive damages to situations in which a defendant has engaged in intentional, willful, wanton, or reckless misconduct, and Defendants have not engaged in any such conduct in this case. (Doc. 61 at 29–31.) Defendants' argument misses the mark.

The Supreme Court has rejected the argument that punitive damages for a § 1981 claim require a certain level of severity in the alleged conduct. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999) (holding that § 1981 "does not require a showing of egregious or outrageous discrimination independent of the employer's state of mind" to establish punitive damages). Rather, a plaintiff may recover punitive damages for a § 1981 race discrimination claim if the plaintiff "demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Thus, although the severity of a defendant's conduct may be relevant evidence in determining whether the defendant has committed the alleged conduct with the

20

requisite state of mind, it is the defendant's state of mind that determines whether a plaintiff may be awarded punitive damages. *Kolstad*, 527 U.S. at 538–39.

Here, Defendants argue that Plaintiff is not entitled to punitive damages because he has not alleged sufficiently severe conduct, but they make no argument as to whether the state of mind standard for punitive damages under § 1981a(b)(1) is satisfied. Defendants have therefore not met their burden of showing that they are entitled to judgment as a matter of law on this issue and the court rejects their argument. Fed. R. Civ. P. 56(a).

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is granted in part and denied in part. An appropriate order follows.

<u>s/Jennifer P. Wilson</u>
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: September 8, 2020